## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| GARDEN CITY BOXING CLUB, INC. § <br> as Broadcast Licensee of the § <br> September 18, 2004 De La Hoya / § <br> Hopkins Event, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> ALAN ROBERT SACKS, Individually and § <br> d/b/a ISLAND OASIS, § <br> § <br> Defendant. § | United States District Court <br> Southern District of Texas <br> ENTERED <br> <br> APR 1 1 2008 <br> <br> Michael N. Milby, Clerk of Court <br> By Deputy Clerk _____ <br> <br> CIVIL ACTION NO. B-07-97 |

### ORDER & OPINION

BE IT REMEMBERED that on April _10_, 2008, the Court **GRANTED** Plaintiff's Motion for Final Default Judgment and Brief in Support. Dkt. No. 6. Although Defendant was personally served with the complaint at 1022 E. Tarpon Ave. Port Isabel, Texas 87578 by a process server, Dkt. No. 4, Defendant did not answer Plaintiff's complaint nor did Defendant answer the instant motion. Plaintiff served Defendant on November 29, 2007 with the Motion for Final Default Judgment at the aforementioned address via certified mail, return receipt requested. Dkt. No. 6, at 26. Therefore, this Court considered Plaintiff's motion, for Final Default Judgment and Plaintiff's Appendix to that motion. Dkt. Nos. 6,7.

### I.    Background

This case arises out of the alleged unlicensed interception and exhibition of a boxing match (the "Event") by Defendant Alan Robert Sacks, individually and doing business as Island Oasis. Dkt. No. 1. The Event was a championship boxing match between Oscar De La Hoya and Barnard Hopkins, which took place on September 18, 2004. *Id.* at 2.

Plaintiff held the exclusive rights to exhibit and sublicense the Event in Texas by virtue of a licensing agreement with the Event's promoter. Dkt. No. 6, at 5-6; Dkt. No. 7, Ex. A at 2; Dkt. No. 7, Ex. A-1 at 1-8. Plaintiff entered into licensing agreements with individual establishments for the commercial exhibition of the Event. Dkt. No. 6, at 6; Dkt. No. 7, Ex. A at 2. Plaintiff supplied the Event to its licensees by way of a scrambled signal sent to the licensees via satellite and cable communication systems. Dkt. No. 6, at 6; Dkt. No. 7, Ex. A at 2. Plaintiff alleges that Defendant intercepted the Event, advertised the Event, charged a twenty dollar ($20) admission fee, and telecast the Event without paying the licensing fee to Plaintiff. Dkt. No. 6, at 6.

Plaintiff filed suit against Defendants on July 12, 2007, alleging causes of action under 47 U.S.C. §§ 553, 605. Dkt. No. 1. This Court entered Default Judgment for Plaintiff on January 18, 2008. Dkt. No. 8. Plaintiff now requests damages pursuant to 47 U.S.C. § 605. Dkt. No. 6, at 10, 17, 22.

## II.    Default Judgment

Plaintiff has provided evidence sufficient to establish violations of 47 U.S.C. §§ 553, 605. Plaintiff therefore had the exclusive right to sublicense the Event to commercial establishments throughout Texas. Dkt. No. 6, at 5-6; Dkt. No. 7, Ex. A at 2; Dkt. No. 7, Ex. A-2 at 2. Defendant's bar was not an authorized sublicensee, and Defendant did not purchase the right to display the Event. Dkt. No. 6, at 10; Dkt. No. 7, Ex. A, at 3. Despite this, Defendant intercepted the Event, unscrambled it, and exhibited it to his patrons. Dkt. No. 6, at 10; Dkt. No. 7, Ex. A at 3. Thus, Defendant violated § 605 and default judgment should be granted.

## III.    Damages

Under the Communications Act, Plaintiff is entitled to choose between actual damages and statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiff requests statutory damages of $10,000, additional damages of $50,000, and attorney's fees. Dkt. No. 6, at 10, 21, 22-23. The Court finds that the conduct alleged in this case is not sufficiently egregious to warrant that amount of damages. *See* Garden City Boxing Club, Inc. v. Meza,

No. H 07CV2959, 2008 WL 585094, *2 (S.D. Tex); Joe Hand Promotions, Inc. v. Garcia, No. SA 07CV419, 2008 WL 596779, *2 (W.D. Tex. 2008); J&J Sports Productions, Inc. v. Kuo, No. EP 07CV75, 2007 WL 4116209, *5 (W.D. Tex. 2007); Top Rank Inc. v. Tacos Mexicanos, No. 01CV5977, 2003 WL 21143072, *5 (E.D.N.Y. 2003).

Defendant charged a twenty dollar ($20) cover charge, televised the Event on three televisions, including one big screen TV, and advertised the Event on the sign for Island Oasis. Dkt. No. 6, Ex. A-2. However, there is no evidence that Defendant engaged in cable piracy on other occasions. This Court must consider those facts and impose damages that "deter[] but [] not destroy." Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999).

### A. *Statutory Damages*

Plaintiff may recover for a violation of § 605(a) a "sum of not less than $1,000, or more than $10,000, as the court considers just." § 605(e)(3)(C)(i)(II). Courts have employed two methods to determine an appropriate amount of statutory damages pursuant to § 605, factoring in the number of patrons or assessing a flat sum. Time Warner Cable v. Taco Rapido Restaurant, 988 F. Supp. 107, 111 (E.D.N.Y. 1997).

In *Kuo*, the district court multiplied the number of patrons by the cost of the residential pay-per-view rate of $54.95. 2007 WL 4116209, *4. However, there were fourteen (14) people in the Island Oasis at 8:45 p.m. when the fight concluded. Dkt. No. 7, A-2. Multiplying the residential rate by the number of patrons would fall below the statutory minimum fine of one thousand dollars ($1000), and therefore is not a viable option for this Court. Similarly, in *Meza*, the district court assessed a flat amount of ten thousand dollars ($10,000) and reasoned that it was particularly appropriate because the defendant was a "repeat offender." 2008 WL 585094, *2. Yet, Plaintiff did not provide this Court with evidence that Defendant has televised programing without a license previously and therefore such a large flat rate is inappropriate.

In *Garcia*, the district court looked to what would the Defendant have had to pay to comply with the law. 2008 WL 596779, *2. In that case, the fee was $875. *Id.* The court reasoned that to treble the fee would adequately account for the sublicense as well as

profits from the 65-80 customers who watched the fight. *Id.* While Plaintiff has not indicated what the cost of the sublicense for Island Oasis would have been, it did state that the minimum sublicense fee for a commercial establishment is one thousand dollars, ($1000). Dkt. No. 6, Ex. A at 3. The fee increased with the maximum fire occupancy. *Id.* As the Event began at 8:00 p.m. and there were only fourteen (14) customers in Defendant's establishment at the end of the Event at 8:45 p.m., this Court holds that twice the minimum sublicense fee is a reasonable damage amount given the circumstances in this case. Therefore, Plaintiff is entitled to two thousand dollars ($2000) of statutory damages.

### *B. Willfulness*

The Court finds that this award should be further increased pursuant to § 605(e)(3)(C)(ii) because it was willful and for the purpose of commercial advantage. Although there is no direct evidence that Defendant acted willfully, "[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955, 959 (E.D. Wisc. 2001) (quoting Time Warner Cable v. Googies Luncheonette, Inc. 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). The Event was rebroadcast to the bar's customers who paid a twenty dollar ($20) cover charge; therefore, this act of cable piracy was for the purpose of direct or indirect commercial advantage. Entertainment by J &J, Inc. v. Al-Waha Enterprises, Inc., 219 F. Supp. 2d 769, 776–77 (S.D. Tex. 2002). Thus, the act was willful under the statute, and an increase in the penalty is appropriate.

In determining the appropriate size of the increase in damages, Courts have generally multiplied the original damages amount by some factor to determine the additional amount. *See, e.g., Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 777 (tripling the damages award). Courts have used factors ranging anywhere from 3 to 7 times the damages amount. *See, e.g.*, Lauratex Textile Corp. v. Allton Knitting Mills, Inc., 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (awarding seven times the statutory damage amount). This Court finds that a factor of three times the damages amount is appropriate, given the

small number of patrons and lack of evidence of repeated violations. Thus, the damages award will be increased by six thousand dollars ($6000).

### C. Attorney's Fees

Under § 605(e)(3)(B)(iii), a prevailing plaintiff is entitled to an award of costs and reasonable attorney's fees. Therefore, Plaintiff requests an award of attorney's fees based on a contingency fee of 33% of the damages award. Dkt. No. 6, at 23. As an alternative, Plaintiff's counsel in his affidavit requests attorney's fees based on a *Lodestar* fee calculation. Dkt. No. 7, Ex. B at 3. This Court must determine which method to use for calculating the appropriate award of attorney's fees and then determine the appropriate amount.

The Court finds the contingency fee approach to be unreasonable and inappropriate when applied to this case. Plaintiff's own evidence establishes that Plaintiff's attorneys expended only four (4) hours on this case. *Id.* This Court finds an award of attorney's fees of more than $2600 to be excessive for this amount of work. Thus, this Court will not utilize the contingency fee method.

However, the Court finds the *Lodestar* method to be entirely reasonable and appropriate. *See* Cablevision Sys. N.Y.C. Corp v. Torres, No. 02 Civ. 7602 (AJP), 2003 WL 22078938, *4 (S.D.N.Y. 2003). Plaintiff established that $250 per hour is a reasonable fee and that four (4) hours were expended on this matter. Dkt. No. 7, Ex. B at 3–4. Therefore, the Court finds that an award of attorney's fees in the amount of one thousand dollars ($1000) is appropriate.

Finally, the Court "declines to award contingent attorney's fees and costs [for possible future events]. [Plaintiff] may apply for such an award if and when such fees and costs are incurred." Nat'l Satellite Sports, Inc. v. Carmen-Garcia, No. 3:01-CV-1799-D, 2003 U.S. Dist. LEXIS 10315, *7 (N.D. Tex. 2003).

### IV.   Conclusion

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Final Default Judgment, Dkt. No. 6, and **ORDERS** that default judgment be entered against Defendants.

Furthermore, the Court **ORDERS** that Plaintiff, Garden City Boxing Club, recover the following from Defendant:

    (1) $2,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

    (2) $6,000 in additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

    (3) $1,000 in attorney's fees.

The above sums, totaling nine thousand dollars ($9000), shall bear interest at the rate of 7.50% per annum from the date of judgment until paid. Finally, Plaintiff's award is limited to this single recovery, for which Defendant Alan Robert Sacks, individually and doing business as Island Oasis shall be liable. All other relief not expressly granted herein against Defendants is **DENIED**.

    DONE at Brownsville, Texas, on April 10, 2008.

                                        Hilda G. Tagle
                                        United States District Judge